Paul S. Grossman, Esq. (PG-6570)
WEINER LAW GROUP LLP
629 Parsippany Road
P.O. Box 0438
Parsippany, New Jersey 07054
(973) 403-1100
*Attorneys for Plaintiff Brett DiNovi & Associates, LLC*

2446517_1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRETT DINOVI & ASSOCIATES, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> AUTOMATIC DATA PROCESSING, INC., <br><br> Defendant. | Case No. 1:22-cv-08123 <br><br> **COMPLAINT** |

Brett DiNovi & Associates, LLC ("BDA"), by and through its attorneys, Weiner Law Group LLP, by way of complaint against Automatic Data Processing, Inc. ("ADP"), alleges as follows:

**INTRODUCTION**

1. As explained more below, this case concerns ADP's shocking and egregious theft of funds from the bank account that BDA maintains for its payroll and 401(k)-related payments ("Payroll Bank Account").

2. In August 2021, BDA and ADP entered into a Comprehensive Human Resources Services Agreement, pursuant to which ADP was to provide to BDA payroll processing, employee time-record keeping, and other human-resources services (the "HR Agreement"). For over seven months, however, ADP tried, and failed, to implement the Agreement. Worse still, ADP had no plan for how it would overcome the hurdles that it encountered.

1

3. Accordingly, in light of the fact that ADP had been provided more than a reasonable amount of time to implement the services it was required to provide, and the continued disruption to BDA's business caused by ADP's failures, BDA decided in April 2022 to discontinue moving forward with the implementation of the HR Agreement. At that time, despite the many months that had elapsed, ADP had not processed a single payroll or provided any other services under the HR Agreement.

4. Despite its complete failure to implement the services within a reasonable time, ADP nevertheless insisted that it was entitled to an "early-termination" fee under the Agreement. ADP calculated that fee at $220,630, which was half of the total value of the Agreement. BDA made it crystal clear that it did not believe that ADP was entitled to any "early-termination" fee and certainly not a fee equal to half the total value of the contract.

5. At this point, it would have seemed, the parties had a garden-variety contract dispute, and ADP's remedy – if it truly believed it was entitled to an early-termination fee – was to sue BDA for breach of contract (after the "notice" and "cure" provisions provided for in the HR Agreement). But ADP was unsatisfied with that route, and so it decided to engage in brazen, illegal, and fraudulent action, which amounted to theft of $220,630.

6. Part of the services under the HR agreement required ADP to process BDA's payroll. In order to perform this function, it would have been necessary for ADP to access BDA's Payroll Bank Account in order to debit the money necessary for BDA's payroll. Accordingly, BDA provided ADP with a limited authorization to debit BDA's Payroll Bank Account. That authorization, however, did not permit ADP to debit BDA's account for whatever purposes it saw fit. Rather, the authorization permitted ADP to access BDA's bank account only for items related to BDA's payroll (such as the payroll itself and related taxes) and for ADP's "Fees for Service."

"Service" was a defined term in the Agreement and meant, "the services (including implementation services related thereto) listed in any Sales Order, and such other services as the parties may agree to be performed from time to time."  It pointedly did not include an "early-termination fee," which is obviously not included in a Sales Order.

7. Yet, through a stunning act of deception, ADP misled BDA's bank into believing that it was authorized to take $220,630 from BDA's Payroll Account – and took that money without any actual notice to BDA.  BDA can only surmise that the withdrawal corresponds with the $220,000 that ADP has previously demanded for "early termination" of the contract.

8. ADP undoubtedly knew its debit of BDA's Payroll Bank Account was wholly unauthorized, but it did so anyway to effectively force BDA to pay a ransom for the return of its own money from a disadvantaged negotiating position.  In short, ADP figured that it is more profitable to negotiate - with stolen funds in hand - forgiveness for an illegal withdrawal, than it is negotiate permission for a lawful payment.  Justice demands a swift and forceful rebuke of ADP's blatant and cynical disregard for the law.

## PARTIES

9. Plaintiff BDA is an LLC organized under the laws of the New Jersey with over 600 employees that work in behavioral and educational consulting.  BDA provides applied behavior analysis consultation to more than 300 school districts across New Jersey, Pennsylvania, California, Florida, Maine, and Texas.  BDA's employees and consultants use applied behavior analysis to help schools and students identify and reduce challenging behaviors such as aggression, self-injury, unsafe behaviors, self-stimulatory behaviors, or repetitive acts and to strengthen and maintain replacement behaviors that serve the same function as the problem behavior in an appropriate manner.  BDA's principal place of business is located in Mount Laurel, New Jersey.

10. Defendant ADP is a corporation organized under the laws of the New Jersey with approximately 60,000 employees. ADP is a large provider of automated payroll and other HR functions. ADP's principal place of business is located in Roseland, New Jersey.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this matter pursuant to 28 U.S.C.A. § 1331 because it raises a federal question for claims brought under 18 U.S.C.A. § 1030, the Computer Fraud and Abuse Act.

12. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C.A. § 1367(a) because they form the part of the same case or controversy.

13. Venue is appropriate in this Court pursuant to an agreement between the parties. Specifically, the HR Agreement provides that any disputes regarding the performance or interpretation of that contract are subject to the exclusive jurisdiction of the state and federal courts in New York, New York.

## FACTS

The HR Agreement

14. On or about August 16, 2021, the parties entered into the HR Agreement, pursuant to which ADP was supposed to provide various human-resources services to BDA, including payroll processing and employee time-record keeping, and other services. (A copy of the HR Agreement is attached hereto as Exhibit A.)

15. Pursuant to the HR Agreement, which was drafted by ADP, ADP had access to the Payroll Bank Account that BDA used to make payments for its employees' payroll and 401(k) contributions. ADP's access to that Account, however, was strictly limited to withdrawals from the Payroll Bank Account to cover payroll and associated service fee payments.

16.     Unfortunately, ADP repeatedly failed to implement the services required by the HR Agreement.  In particular, ADP was unable to integrate its software with BDA's existing Central Reach Program, which is an industry-standard program used by behavioral analysts for practice-management tasks.  Eventually, ADP brought in a third-party (which ADP had recently acquired), Integrated Design, Inc. ("IDI"), that specializes in industry-specific human-resources solutions.  But IDI was also unable to solve the problems.

17.     BDA spent countless hours working with ADP and IDI to aid them in their integration efforts, but in the end they were unsuccessful.  Ultimately, on or about April 18, 2022, approximately seven months after the HR Agreement was signed, BDA indicated that it wanted to "discontinue moving forward."

18.     On July 6, 2020, nearly three months later, ADP responded by email claiming that it was entitled "contractual buyout fees" in the amount of $220,630.  ADP's email specifically stated that an invoice would follow "in approximately 30 days" and would "have the remittance information" on it.

19.     BDA was naturally outraged that ADP would assert an entitlement to an early-termination fee equal to half the value of the Agreement when, after more than seven months, ADP had failed to implement its services.  This was especially so because BDA had spent so much time, at considerable expense to itself, attempting to help ADP overcome its failure to deliver.  While BDA had entered into the HR Agreement hoping to secure ADP's services, and was willing to pay for those services, it was crystal clear by April 2022 that ADP would not be able to deliver.

The Authorization

20.     Strictly so that ADP could provide the services under the HR Agreement, such as processing BDA's payroll, BDA provided ADP with an "authorization" that permitted ADP to debit

5

the Payroll Bank Account (the "Authorization") for limited purposes. (A copy of the Authorization is attached hereto as Exhibit B.) Specifically, the Authorization permitted ADP to withdraw money from BDA's bank account in order to provide the "Services" as well as for its "Fees for Services." "Services" is defined in the HR Agreement as meaning "the services (including implementation services related thereto) listed in any Sales Order, and such other services as the parties may agree to be performed from time to time." (HR Agreement § 1.34). As should be self-evident, "Services" does not include an "early-termination fee."

The Unlawful Transfer

21. On September 12, 2022, without any actual notice to BDA, ADP used its access to BDA's account information to falsely represent to BDA's bank (Bank of America) that ADP was entitled to debit $220,630 from BDA's Payroll Account. As a result, ADP successfully transferred $220,630 from BDA's Payroll Account to an account controlled by ADP for its own use (the "Unlawful Transfer").

22. BDA first learned of the Unlawful Transfer on September 13, 2022. On September 14, 2022, BDA's attorneys transmitted a letter to ADP demanding an immediate return of the funds. To date, ADP has not returned the funds secured by the Unlawful Transfer to BDA.

The 401(k) Agreement

23. One month after the parties entered into the HR Agreement, on or about September 17, 2021, the parties entered a separate contract for ADP to provide recordkeeping and administrative services for BDA's 401(k) plan (the "401(k) Agreement").

24. The 401(k) Agreement also provided authorization for ADP to charge BDA's Payroll Bank Account for an expressly defined unambiguous set of fees, none of which included

termination fees for the proposed HR Agreement. The 401(k) Agreement is an ongoing agreement, and to this day ADP is accessing BDA's Payroll Bank Account for that purpose.

25. At this time, BDA remains dependent upon ADP for services to employees through the Payroll Bank Account. ADP's services are intertwined with fiduciary obligations of the upmost important that BDA has to its employees regarding their pay and retirement plans.

26. BDA intends to terminate the 401(k) Agreement, but fears that when it does so, ADP will once again improperly access its Payroll Bank Account to deduct an "early-termination fee" to which ADP is not entitled. This fear is exacerbated by ADP's wantonly illegal actions in connection with the HR Agreement.

27. ADP's unlawful actions and its blatant disregard for contractual terms have left BDA with an impossible dilemma: leave the relationship with ADP unchanged and risk further unlawful withdrawals that threaten the integrity of the Payroll Bank Account, or immediately sever its relationship with ADP and risk interruptions to payroll and 401K services, which could impact BDA's fiduciary obligations to its employees. Both options pose an unacceptable risk of immediate and irreparable harm to the paramount relationship and duties that BDA has with its employees

**COUNT ONE**
**(Computer Fraud and Abuse Act)**

28. BDA repeats and realleges each and every allegation set forth above as if fully set forth herein.

29. BDA's Payroll Account is maintained on a protected computer server that is subject to rigorous security protocols.

30. ADP used confidential information received from BDA to knowingly mislead Bank of America into believing that the Unlawful Transfer was authorized. As a result, ADP was able to obtain unauthorized access to the protected computer server and stole $220,630 from BDA.

31. ADP's Unlawful Transfer was done without actual notice to BDA. Moreover, as an employer, BDA has a critical duty to protect the integrity of its Payroll Account. Accordingly, ADP caused BDA to reasonably expend resources and time investigating and responding to the Unlawful Transfer, aggregating in a loss to BDA of at least $5,000.

WHEREFORE, BDA demands judgment against ADP for:

    a. Compensatory damages in an amount to be determined at trial, but not less than (i) the amount of the Unlawful Transfer; and (ii) the costs, expenses, and reasonable attorney's fees associated with investigating and responding to the Unlawful Transfer.

    b. Such further relief as the Court may deem equitable, proper, and just.

## COUNT TWO
### (New Jersey Computer Related Offenses Act)

32. BDA repeats and realleges each and every allegation set forth above as if fully set forth herein.

33. The Unlawful Transfer constituted a purposeful, knowing, and unauthorized access of a computer system and network, and accessing and obtaining a financial instrument in violation of N.J.S.A. 2A:38A-3.

34. The Unlawful Transfer knowingly targeted and damaged BDA, a New Jersey business, resulted in an investigation and response by BDA from its New Jersey headquarters, and, upon information and belief, was set in motion and carried out from ADP's New Jersey headquarters.

35. BDA incurred significant damages to its business and property because of ADP's actions.

WHEREFORE, BDA demands judgment against ADP for:

    a. Compensatory damages in an amount to be determined at trial, but not less than (i) the amount of the Unlawful Transfer; and (ii) the costs, expenses, and reasonable attorney's fees associated with investigating and responding to the Unlawful Transfer.

    b. Punitive Damages in an amount to be determined at trial.

    c. Reasonable litigation costs and attorney's fees.

    d. Preliminary and Permanent injunctive relief ordering ADP not to cause any withdrawal from BDA's accounts that is not authorized by BDA.

    d. Such further relief as the Court may deem equitable, proper, and just.

## COUNT THREE
### (Conversion)

36. BDA repeats and realleges each and every allegation set forth above as if fully set forth herein.

37. BDA owned the Payroll Account and had the right to immediate possession of the funds held therein, which were identifiably BDA's property. ADP's Unlawful Transfer was a wrongful interference with that right.

38. ADP's Unlawful Transfer was a willful act taken for ADP's personal benefit with an indifference to the rights of BDA.

WHEREFORE, BDA demands judgment against ADP for:

    a. Compensatory damages in an amount to be determined at trial, but not less than (i) the amount of the Unlawful Transfer; and (ii) the costs, expenses, and reasonable attorney's fees associated with investigating and responding to the Unlawful Transfer.

      b.      Punitive Damages in an amount to be determined at trial.

      c.      Preliminary and Permanent injunctive relief ordering ADP to return the Unlawful Transfer and not to cause any withdrawal from BDA's accounts that is not authorized by BDA.

      d.      Such further relief as the Court may deem equitable, proper, and just.

## COUNT FOUR
### (Receiving Stolen Property)

39.      BDA repeats and realleges each and every allegation set forth above as if fully set forth herein.

40.      The $222,630 taken from BDA constitutes "Stolen Property" under N.J.S.A. 2C:20-1(p) ("property that has been the subject of any unlawful taking").

41.      ADP had no basis to believe its actions were lawful, and when confronted, could not articulate a specific justification for the Unlawful Transfer. Moreover, ADP is in the business of transacting in this sort of property and upon information and belief, did not make a reasonable inquiry to determine if the property was obtained via a legal right to possess or dispose of it. ADP thus violated N.J.S.A. 2C:20-7 by receiving control of BDA's movable property while knowing or believing that it was stolen.

42.      BDA has been damaged in its property and business by ADP's violation of N.J.S.A. § 2C:20-7 and is therefore authorized to sue ADP pursuant to N.J.S.A. § 2C:20-20.

WHEREFORE, BDA demands judgment against ADP for:

      a.      Compensatory damages in an amount to be determined at trial, but not less than (i) the amount of the Unlawful Transfer; and (ii) the costs, expenses, and reasonable attorney's fees associated with investigating and responding to the Unlawful Transfer.

      b.      Reasonable litigation costs and attorney's fees.

  c. Punitive Damages in an amount to be determined at trial.

  d. Preliminary and Permanent injunctive relief ordering ADP not to cause any withdrawal from BDA's accounts that is not authorized by BDA.

  5. Such further relief as the Court may deem equitable, proper, and just.

## COUNT FIVE
### (Breach of Contract – Unlawful Transfer)

  43. BDA repeats and realleges each and every allegation set forth above as if fully set forth herein.

  44. BDA and ADP entered into the HR Agreement and the Authorization, which provided authorization for ADP to charge BDA's Payroll Account only for an expressly defined unambiguous set of service fees, none of which included termination fees for the HR Agreement.

  45. ADP's Unlawful Transfer constitutes a breach of the HR Agreement and/or the Authorization.

  46. BDA has been damaged by ADP's breach of the HR Agreement and/or the Authorization.

WHEREFORE, BDA demands judgment against ADP for:

  a. Compensatory damages in an amount to be determined at trial, but not less than (i) the amount of the Unlawful Transfer; and (ii) the costs, expenses, and reasonable attorney's fees associated with investigating and responding to the Unlawful Transfer.

  b. Preliminary and Permanent Injunctive relief ordering ADP not to cause any withdrawal from BDA's accounts that is not explicitly authorized by a contract between the parties.

  c. Such further relief as the Court may deem equitable, proper, and just.

## COUNT SIX
## (Breach of Contract—Failure to Perform Contracted Services)

47. BDA repeats and realleges each and every allegation set forth above as if fully set forth herein.

48. Pursuant to the HR Agreement, ADP was contractually obligated to provide specific services within a reasonable period of time.

49. ADP failed to provide those services within a reasonable period of time and had no ability to provide those services.

50. By failing to provide the contracted-for services within a reasonable period of time, ADP breached the HR Agreement.

51. BDA was damaged as a result of ADP's breach.

WHEREFORE, BDA demands judgment against ADP for:

    a. Compensatory damages in an amount to be determined at trial, but not less than (i) the amount of the Unlawful Transfer; and (ii) the costs, expenses, and reasonable attorney's fees associated with investigating and responding to the Unlawful Transfer.

    b. Such further relief as the Court may deem equitable, proper, and just.

## COUNT SEVEN
## (Breach of the Covenant of Good Faith and Fair Dealing)

52. BDA repeats and realleges each and every allegation set forth above as if fully set forth herein.

53. ADP's actions, to the extent such actions does not violate an explicit provision of a contract with BDA, were taken maliciously and in bad faith to deprive BDA of the benefits of the bargain.

WHEREFORE, BDA demands judgment against ADP for:

  a. Compensatory damages in an amount to be determined at trial, but not less than (i) the amount of the Unlawful Transfer; and (ii) the costs, expenses, and reasonable attorney's fees associated with investigating and responding to the Unlawful Transfer.

  b. Such other and further relief as the Court may deem equitable, proper, and just.

## COUNT EIGHT
### (Unjust Enrichment)

54. BDA repeats and realleges each and every allegation set forth above as if fully set forth herein.

55. ADP's actions, to the extent such actions are not governed by a contract between the parties, resulted in ADP receiving $220,630 from BDA.  ADP's continued retention of BDA's funds would be unjust and BDA's requested remuneration is consistent with the principles of equity.

WHEREFORE, BDA demands judgment against ADP for:

  a. Compensatory damages in an amount to be determined at trial, but not less than the amount of the Unlawful Transfer.

  b. Such further relief as the Court may deem equitable, proper, and just.

Dated: September 22, 2022

         **WEINER LAW GROUP LLP**

         By: _/s/ Paul S. Grossman_
           Paul S. Grossman
           pgrossman@weinerlaw.com

         629 Parsippany Road
         P.O. Box 0438
         Parsippany, New Jersey 07054
         (973) 403-1100

         *Attorneys for Plaintiff Brett DiNovi & Associates, LLC*